IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00945-WJM-STV

TAGE RUSTGI,

      Plaintiff,

v.

STEVE REAMS, in his individual and official capacities,
MICHAEL RECOR, in his individual capacity,
TYLER PISCOYA, in his individual capacity,
CORY CHANNEL, in his individual capacity,
JOSEPH MARTINEZ, in his individual capacity,
MICHAEL THOMPSON, in his individual capacity,
KYLE PENNY, in his individual capacity,
ANDREW WILSON, in his individual capacity,
SAVANNAH COBLE, in her individual capacity,
AMY ERICKSON, in her individual capacity,
JOHN DOES 1-5, in their individual capacity,
BOARD OF COUNTY COMMISSIONERS OF COUNTY OF WELD, COLORADO,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

      Defendants Sheriff Steven Reams, Michael Recor, Tyler Piscoya, Cory Channel, Joseph Martinez, Michael Thompson, Kyle Penny, Andrew Wilson, Savannah Coble, Anna Erickson,[1] and the Board of County Commissioners of Weld County Colorado ("BOCC") (collectively "Defendants"), by and through their attorneys, Matthew J. Hegarty, Esq., and Aaron J. Thompson, Esq., and pursuant to Fed.R.Civ.P. 8 and Fed.R.Civ.P. 12, respectfully submit this Motion to Dismiss Plaintiff's Complaint [ECF 1], stating in support as follows:

---

[1] Incorrectly identified in ECF 1 and the caption as "Amy Erickson".

**WJM CIV. PRAC. STD. III.D.1 CONFERRAL:** Counsel for Defendants conferred with counsel for Plaintiff on this Motion. Although Defendants do not believe the deficiencies below (save some of the *Robbins* deficiencies) can be cured by amendment, Defendants asked Plaintiff to consider dismissing some or all claims and, at the very least, indicate who did what to whom. Plaintiff declined to dismiss any claims at this time and further declined to substantively discuss amendment of the Complaint. The parties were unable to stipulate to any appropriate amendments.

## I.  INTRODUCTION

Plaintiff brings this action under 42 U.S.C. § 1983 and it concerns Plaintiff's detention at the Weld County Jail ("WCJ") due to his public intoxication. [ECF 1 ¶¶ 31, 32]. While detained, Plaintiff exhibited unpredictable and uncontrolled behavior, which necessitated Plaintiff's restraint by Detentions Division Deputies ("Deputies") of the Weld County Sheriff's Office ("WCSO").

Plaintiff asserts four claims: (1) Excessive Force – Individual Liability, allegedly in violation of the Fourth and Fourteenth Amendments; (2) Excessive Force – Supervisory Liability, allegedly in violation of the Fourth and Fourteenth Amendments; (3) *Monell* Liability, allegedly in violation of the Fourth and Fourteenth Amendments, and; (4) an alleged Fourteenth Amendment Substantive Due Process Violation. For the below reasons, Plaintiff's claims should be dismissed because he fails to allege sufficient facts to maintain them, they are otherwise precluded as a matter of law, and all Defendants named in their individual capacities are entitled to qualified immunity.

## II.  ARGUMENT

A.   **Plaintiff's Complaint Fails Federal Pleading Standards and Must Be Dismissed**

First, Plaintiff fails to articulate what wrongs each Deputy named individually ("Individual Defendants") allegedly committed. A § 1983 complaint naming multiple public employees must, under Rule 12, "make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each

individual with fair notice as to the basis of the claims against him or her." ***Robbins v. Oklahoma***, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). Thus, "[w]hen various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention 'defendants' infringed his rights." ***Pahls v. Thomas***, 718 F.3d 1210, 1225-26 (10th Cir. 2013). "Rather, it is incumbent upon a plaintiff to identify <u>specific</u> actions taken by <u>particular</u> defendants in order to make out a viable § 1983" claim. ***Id.*** The mere metaphysical possibility <u>some</u> plaintiff could prove <u>some</u> set of facts for the claims is insufficient; the complaint must give reason to believe <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims. ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007). All well-pleaded <u>fact</u> allegations are viewed favorably to Plaintiff. ***Brown v. Montoya***, 662 F.3d 1152, 1162 (10th Cir. 2011). All conclusory statements of law are set aside. ***Kan. Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011). And Rule 8, as interpreted by the Supreme Court, forbids "labels and conclusions or a formulaic recitation of the elements of a cause of action." ***Khalik v. United Air Lines***, 671 F.3d 1188, 1191 (10th Cir. 2012).

Due to Plaintiff's generalized allegations, Defendants cannot ascertain what wrong each is alleged to have committed. Plaintiff's Complaint fails to describe any specific action taken by any particular Defendant in violation of Plaintiff's constitutional rights. *See **Robbins***, 519 F.3d at 1250 ("Given the complaint's use of … the collective term 'Defendants' … with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *see also **Brown v. Montoya***, 662 F.3d 1152, 1162 (10th Cir. 2011) (plaintiff must identify specific acts a specific defendant took which form the basis of a constitutional violation, and not lump numerous defendants into a

single claim or use the collective "Defendants" without isolating allegedly unconstitutional acts); *cf. **Gray v. Univ. of Colo. Hosp. Auth.**,* 672 F.3d 909, 921 n.9 (10th Cir. 2012) (defendants lacked notice because the claim used the collective "Defendants").

Here, Plaintiff's Complaint includes only a single allegation against Defendants Recor [ECF 1 ¶ 23], Channel [¶ 20], Martinez [¶ 21], Thompson [¶ 22], Penny [¶ 24], Wilson [¶ 26], Coble [¶ 27], and Erickson [¶ 28]. Plaintiff does not allege any unconstitutional acts or omissions by them, but merely describes  their status as U.S. citizens, employed by WCSO, and domiciled in Colorado. The allegations against Defendant Piscoya fare no better. [*Id.* at ¶¶ 25, 34, 39]. Plaintiff alleges the same facts as against the other Individual Defendants [¶ 25]; identifies Piscoya in a photograph and describes his clothing [¶ 34]; and alleges Piscoya used ear protection. [¶ 39]. These allegations are wholly insufficient to state a claim for relief. *See, e.g., **Bell Atl. Corp. v. Twombly***, 550 U.S. 544 (2007); ***Ashcroft v. Iqbal***, 556 U.S. 662, 677-78 (2009). Accordingly, all claims against Individual Defendants must be dismissed for failure to meet federal pleading standards.

## B.  Individual Defendants and Sheriff Reams are Entitled to Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to meet a strict two-part test. Specifically, the plaintiff must show: (1) "the defendant's actions violated a federal constitutional or statutory right," and (2) "the right was clearly established at the time of the defendant's unlawful conduct." ***Cillo v. City of Greenwood Vill.***, 739 F.3d 451, 460 (10th Cir. 2013).

On the first prong, the issue is whether Defendants' actions as alleged in the complaint violated a constitutional right. ***Behrens v. Pelletier***, 516 U.S. 299, 309 (1996). On the second

prong, the issue is whether it would have been clear to a defendant the conduct was unlawful in the situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (right violated "must be defined at the appropriate level of specificity"). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows the right must be as the plaintiff maintains." *Thomas*, 765 F.3d at 1194. "While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Id.* The essence of prong 2 is whether the state of the law at the time of the incident gave the defendant "fair warning" the alleged conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam). A court may address either prong first depending on the situation in the particular case. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But "existing precedent" must put the constitutional question "beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam).

Plaintiff contends the use of force by Individual Defendants was objectively unreasonable and excessive [ECF 1 ¶¶ 65, 75, 89, 95, 96, 101, 103, 133]; even in light of Plaintiff's level of intoxication. [*Id.* ¶¶ 31, 32]. Even if this Court could infer a constitutional violation, Plaintiff can point to no binding Supreme Court or Tenth Circuit precedent establishing Individual Defendants' acts were unreasonable. Plaintiff cannot establish the use of Nova Distraction Rounds ("NDR"s), or the brief restraint of a drunken detainee, under similar circumstances, was excessive force or otherwise prohibited by clearly established law. Indeed, Defendants could find no case holding the use of NDRs was unconstitutional in any context in any Circuit court. Nor can Plaintiff cite to any clearly established law holding a use of force lasting only a few seconds (as here) signals a failure to intervene by anyone. Thus, Plaintiff cannot show the law was as he maintains or was clearly

established, and this Court should dismiss Plaintiff's claims against Individual Defendants and the Sheriff as discussed more fully below. ***Cox v. Glanz***, 800 F.3d 1231, 1248 (10th Cir. 2015).

**C. Plaintiff's Municipal Liability Claim Fails as a Matter of Law**

*1. The Official Capacity Claim Against the Sheriff is Redundant and Unnecessary*

Plaintiff sued both the Sheriff in his official capacity and the BOCC. Both claims amount to actions against the County and are thus redundant. *See **Kentucky v. Graham***, 473 U.S. 159, 166 (1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); ***Martinez v. Beggs***, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity ... is the same as bringing a suit against the county"). Thus, Plaintiff's official capacity claims against the Sheriff should be dismissed as redundant.

*2. Plaintiff's Municipal Liability Claim Fails as a Matter of Law*

Local governments may not be sued under § 1983 for an injury inflicted solely by their employees or agents. ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 691 (1978). ***Monell*** explicitly rejected the notion of entity liability based on either a *respondeat superior* or vicarious liability theory. ***Id.*** at 694. Thus, absent a municipal custom, policy, practice, or inadequate training, Plaintiff's claim must fail. Furthermore, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." ***Graves v. Thomas***, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing ***City of L.A. v. Heller***, 475 US. 796, 799 (1986)). As discussed more fully below in Sections II.D, II.E, and II.F, because neither the Sheriff, nor Individual Defendants, violated Plaintiff's constitutional rights, Plaintiff's ***Monell*** claim must be dismissed.

*a. Plaintiff fails to establish his inadequate training claim*

Plaintiff makes vague claims about the scope of training provided, but fails to allege facts showing the training was deficient or unconstitutional in any concrete way. Stripped of conclusory

and formulaic recitations, Plaintiff's allegations boil down to assertions Sheriff Reams provided weapons training involving Kel-Tec Shotguns ("KSG"s) [ECF 1 ¶¶ 3-5, 61, 68, 75, 87, 89]; Sheriff Reams hired Joseph Garcia ("Garcia") to train WCJ staff, which somehow was improper [*id.* ¶¶ 4, 55, 63-65, 72, 74]; and the training was "militarized" [*id.* ¶¶ 5, 7, 54, 65, 69, 72, 88].

"In the absence of an explicit policy or an entrenched custom, 'the inadequacy of police training may serve as a basis of § 1983 liability ... where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact.'" ***Newell v. City of Salina***, 276 F. Supp. 2d 1148, 1156 (D. Kan. 2003) (quoting ***City of Canton v. Harris***, 489 U.S. 378, 392 (1989)). The "well established" elements of a § 1983 claim for inadequate use of force training for police require a showing: "(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." ***Id.*** Even assuming, *arguendo*, Plaintiff can establish the first and second elements, Plaintiff fails to provide any support for the third and fourth elements.

As to the third element, there is no allegation the training was inadequate or attributable to deliberate indifference. To establish deliberate indifference, a plaintiff must show "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," policymakers reasonably can be said to have been deliberately indifferent to the need. ***Brown v. Gray***, 227 F.3d 1278, 1288 (10th Cir. 2000) (quoting ***Harris***, 489 U.S. at 390).

Although Plaintiff alleges the BOCC is liable "for maintaining unconstitutional as well as deliberately indifferent" training [ECF 1 ¶ 122]; this allegation is simply a regurgitation of the

legal standard and provides no basis for this Court to conclude the BOCC was deliberately indifferent to training needs of Deputies. Furthermore, Plaintiff fails to allege any longstanding or wide-spread practice of Deputies using excessive force or misusing NDRs from which the BOCC could ascertain a need for additional training. In fact, Plaintiff fails to identify any prior incidents where Deputies misused NDRs or restrained a drunken detainee. While Plaintiff alleges Deputies used rubber bullets against detainees in 2017 and 2018 [ECF 1 at ¶¶ 11, 85-86]; Plaintiff does not indicate the use of rubber bullets in those cases was found to be wrongful or unconstitutional and moreover ignores the fact Individual Defendants did not use rubber bullets against Plaintiff. As such, there is no indication the BOCC was aware of any misuse of NDR rounds now or at any time previously or was deliberately indifferent to the restraints used to control intoxicated individuals. Moreover, because rubber bullets were used in 2017 and 2018 but were not used here, Plaintiff implicitly suggests the BOCC and Sheriff Reams acted to address the force used at WCJ.

Also fatal to Plaintiff's claim, is his failure to allege Garcia's training program was inadequate or suffered from any "glaring omission" from which "one could reasonably say the use of excessive force against the plaintiff ... was a highly predictable consequence of the omission." *Newell*, 276 F.Supp.2d at 1158. Plaintiff also does not allege facts to show the training was "inadequate as compared to any recognized or accepted law enforcement standards." *Id.* Plaintiff has thus failed to demonstrate deliberate indifference with regard to Deputy training.

As to the fourth element, Plaintiff fails to sufficiently allege a direct causal link between the constitutional deprivation and inadequate training. "[I]n order for liability to attach for failure to train, 'the identified deficiency in a city's training program must be closely related to the ultimate injury,' so that it 'actually caused' the constitutional violation." *Brown*, 227 F.3d at 1290 (quoting *Harris*, 489 U.S. at 390). Plaintiff fails to allege any deficiency in the training program

with respect to the use of force, and Plaintiff fails to explain how any alleged deficiency is so "closely related" to his restraint or the use of NDRs that it caused the alleged constitutional deprivation here. As such, Plaintiff has failed to "go beyond mere allegations that officer training is deficient" to properly establish a claim for inadequate training. ***Newell***, 276 F.Supp.2d at 1158 (citing ***Meade v. Grubbs***, 841 F.2d 1512, 1528 (10th Cir. 1988)).

Furthermore, Plaintiff alleges no facts from which it can be determined the BOCC was on notice additional, "specific training was necessary to avoid [a] constitutional violation." ***Connick v. Thompson***, 563 U.S. 51, 63 (2011). Even if prior misuses of the NDR or other constitutionally excessive restraints existed, this addresses only the threshold matter; it does not address <u>notice</u> of prior violations or suffice to allege the BOCC was aware specific additional training was needed. ***Leadholm v. City of Commerce City***, 2017 U.S. Dist. LEXIS 70657, at *20 (D. Colo. May 9, 2017) ("showing merely additional training would have been helpful in making difficult decisions does not establish municipal liability") (citing ***Connick***, 563 U.S. at 68).

Last, although "a pattern of similar violations might not be necessary to show deliberate indifference," where the need to train in a particular area is "so obvious and the likelihood of constitutional violations [so] highly predictable" the municipality, by failing to train, can be said to be deliberately indifferent, ***Connick***, 563 U.S. at 63, Plaintiff does not aver facts establishing the need to train was so obvious the "single incident" exception should apply in the absence of prior notice. ***Zartner v. City & Cnty. of Denver***, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2014); ***Sandberg v. Englewood***, 727 F. App'x 950, 964 (10th Cir. 2018) (complaint failed to "set[] out the text of any [] policy"); ***J.V. v. Alb. Pub. Sch.***, 813 F.3d 1289, 1298 (10th Cir. 2016) ("bare allegation" of failure to train "is not nearly enough to show deliberate indifference"). Plaintiff has not shown the BOCC was "on notice of the need for more or better training" and has not pointed

to a single incident similar to this one. *Id.*; *Sandberg*, 727 F. App'x at 964 (complaint does not "describe any prior incidents that would have established a pattern or practice ... that could cause us to view subsequent inaction as evidence of a policy of deliberate indifference").

Accordingly, this Court should dismiss Plaintiff's inadequate training claim.

### b.   Plaintiff fails to establish his municipal custom, practice, or policy claim

To establish municipal liability, Plaintiff must show "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A claim failing to identify a specific policy, to explain how it caused the complained-of constitutional violation, or to sufficiently allege deliberate indifference, should be dismissed. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277 (10th Cir. 2019) (affirming Rule 12 dismissal); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (*Monell* and its progeny require the plaintiff to identify a "widespread" municipal policy or custom which was the "moving force" behind plaintiff's injury)). Taken together, a "municipality ... may be held liable only if [the alleged] constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." *Connick*, 563 U.S. at 61. But an alleged policy or custom must consist of much more than what allegedly happened to the plaintiff. *E.g.*, *Griego v. City of Alb.*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015) ("[A]t the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted.").

Plaintiff fails to identify the existence of a specific unconstitutional custom or policy promulgated on behalf of the BOCC. Plaintiff also fails to identify a causal link between the BOCC's actions or policies and any constitutional deprivation. Despite the dictates of *Twombly*, Plaintiff resorts to mere labels, conclusions, and formulaic recitation of the elements in support of

his **Monell** claim. Plaintiff merely invokes the rhetoric of a claim and describes the elements of a claim but provides no facts in support. **Rogan v. City of Boston,** 267 F.3d 24, 27 (1st Cir. 2001) (plaintiff's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative").

Plaintiff seems to suggest Sheriff Reams was on notice of the allegedly unconstitutional nature of Garcia's training due to vague reports of training at other jails, or because the training was "militarized" – whatever that means. Courts in this District, however, hold vague allegations of being "on notice" are not enough to state a claim. *E.g.*, **Bauer v. Denver**, 2015 U.S. Dist. LEXIS 87833, at *12 (D. Colo. July 7, 2015) ("[C]onclusory and vague allegation of other publicized cases, in and of itself, cannot support a plausible case of municipal liability. Rather, Plaintiff's complaint has failed to identify any policy or custom employed by Defendant to effectuate the alleged constitutional violation."), *aff'd*, 642 F. App'x 920 (10th Cir. 2016). Plaintiff also appears to rest on his allegation the WCSO has been subjected to some nebulous, undefined "inquiry" by federal authorities. [ECF 1 at ¶ 85]. Even assuming this is true, it is insufficient to establish a municipal practice "was the moving force" behind the specific constitutional violation under **Brown**, 520 U.S. at 404, or the BOCC consciously or deliberately chose to disregard a risk of harm after notice under **Harris**, 489 U.S. at 389. Plaintiff's allegations concerning other cases involving Garcia's training, or vague reference to other unspecified incidents occurring at the WCJ, alone cannot support a plausible case of municipal liability. Instead, Plaintiff's Complaint fails to identify any policy or custom effectuating any alleged constitutional violation.

Further, Plaintiff must allege the BOCC had "actual or constructive notice" of a training deficiency yet failed to take corrective action. **Connick**, 563 U.S. at 61. The notice-rendering pattern must be of "similar" alleged violations. **Id.** at 62. Plaintiff does not allege substantially

similar prior uses of force in the WCJ, nor does he allege facts sufficient to conclude the use of force in any prior incident was unreasonable within the meaning of the Fourth Amendment. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Also, the mere existence of previous complaints does not suffice to show a municipal custom of permitting or encouraging excessive force. *Mettler*, 165 F.3d at 1205 ("the number of complaints bears no relation to their validity")). A plaintiff must also show the county failed to investigate or take corrective action on any prior meritorious excessive force claim. *See id.*; *Lewis v. Bd. of Sedgwick Cnty. Comm'rs*, 140 F. Supp. 2d 1125, 1138 (D. Kan. 2001) (county entitled to judgment where plaintiff failed to present any evidence county failed to take corrective action on any prior meritorious complaint); *Gantos v. City of Colo. Springs Police Dep't*, 2008 U.S. Dist. LEXIS 12465, at *9 (D. Colo. Feb. 20, 2008) ("Absent some showing the previous complaints had merit, and the [police department] avoided or ignored meritorious complaints, such previous complaints do not support a municipal liability claim.").

Even if prior incidents involved excessive force, which there is no indication they did, Plaintiffs allegations are still lacking. *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (to prove "continuing, persistent and widespread" practice, plaintiffs usually offer evidence suggesting similarly situated individuals were mistreated by the entity in a similar way); *Prince v. Cuny*, 423 F. App'x 447, 451 (5th Cir. 2011) ("Nor does the existence of one or two prior incidents indicate [the municipality] was deliberately indifferent."); *Harper v. Se. Ala. Med. Ctr.*, 998 F. Supp. 1289, 1301 (S.D. Ala. 1998) ("[T]he prior incidents must be sufficiently related in time and circumstances to the conduct giving rise to the pending action."); *Mindler v. Clayton Cnty.*, 831 F. Supp. 856, 862 (N.D. Ga. 1993) (finding "three remotely comparable allegations of similar conduct" insufficient to create a question of fact as to municipal liability).

Additionally, Plaintiff does not identify a policy or custom which was the moving force behind the alleged constitutional violations. [*See generally* ECF 1]. Plaintiff claims training and policy is constitutionally inadequate but, other than general averments about Garcia's YouTube videos and persona, Plaintiff fails to identify any specific training or policy or why such training is inadequate or unconstitutional. Plaintiff also fails to explain what would be constitutionally permissible. Next, Plaintiff fails to identify even a single similar instance of a prior constitutional violation caused by an inadequate policy or training, much less a sufficient number of instances similar in character and temporally related, so as to put the BOCC on notice the policy or training was constitutionally deficient. Further, Plaintiff fails to allege any factual predicate for the need for any different custom, policy, or practice, fails to allege factually why there is a need for more or different training, and identifies no factual basis for the legal conclusions set forth. Moreover, Plaintiff alludes only vaguely to better or proper use of KSGs, baldly alleging WCSO's use is "contrary to the appropriate use of such weaponry and is extremely dangerous in the jail setting." [ECF 1 at ¶ 6]. Plaintiff, however, does not explain what policy or training caused unconstitutional use in this case, identify similar past unconstitutional use, suggest what proper use in a jail context might entail, or suggest the use of KSGs is *per se* unconstitutional in the corrections context.

In short, Plaintiff's Third Claim for Relief is full of high-sounding rhetoric attempting to support legal conclusions of liability but is devoid of the factual basis necessary to plausibly set forth a viable claim. Plaintiff's Third Claim for Relief should be dismissed.

**D.  Plaintiff's Supervisory Liability Claim Against the Sheriff Also Fails**

*1.   Plaintiff Fails to Provide Enough Facts to Establish the Elements of Supervisory Liability*

"[I]n a § 1983 lawsuit, supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes

to be subjected, that plaintiff to the deprivation of any rights secured by the Constitution." ***Crocker v. Glanz***, 752 F. App'x 564, 567-68 (10th Cir. 2018) (quoting ***Cox***, 800 F.3d at 1248). Because § 1983 does not authorize liability under a theory of *respondeat superior*, "[a] plaintiff arguing for the imposition of supervisory liability ... must show an affirmative link between the supervisor and the constitutional violation." ***Id.*** "The … affirmative link between a supervisor and the alleged constitutional injury has ... three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." ***Id.***

Plaintiff could meet the personal-involvement prong via adequate facts showing the Sheriff was responsible for but "failed to create and enforce policies to protect" him from the restraint or use of NDRs. ***Keith v. Koerner***, 843 F.3d 833, 840 (10th Cir. 2016). Here, however, Plaintiff only alleges the Sheriff "had a non-delegable duty to ensure he implemented constitutional training and policies for WCSO. He has failed to do that ... through his own conduct and decision-making, as well as through hiring and working with Joseph Garcia over a period of years to implement the Special Operations Group." [ECF 1 ¶ 55]. This showpiece of conclusory allegations is woefully inadequate. Even though Plaintiff takes umbrage at Garcia's engagement, he never explains why it was unconstitutional. Plaintiff's allegations on Garcia consist of unspecified and unsubstantiated rumors about trainings at other jails [*id.* ¶ 72], or Garcia's purported lack of qualifications [*id.* ¶ 74], even though Plaintiff also admits Garcia conducted trainings all over the country [*id.* ¶¶ 72, 73]. Plaintiff fails to adequately allege the Sheriff's personal participation in a constitutional tort.

Next, to establish causation, Plaintiff must show the Sheriff "set in motion a series of events [he] knew or reasonably should have known" would cause others to deprive him of constitutional rights. ***Keith***, 843 F.3d at 847 (quoting ***Schneider***, 717 F.3d at 768 ). Apart from taking issue with Garcia's training, which Plaintiff cannot show is wrongful, he fails to meet his causation burden.

Finally, in the context of a Fourteenth Amendment claim like this one, Plaintiff could show the requisite culpable state of mind via adequate facts indicating the Sheriff "acted with deliberate indifference." *Id.* at 847-48. The deliberate-indifference test has three requirements: (1) the Sheriff was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) he actually drew the inference; and (3) he was "aware of and fail[ed] to take reasonable steps to alleviate that risk." *Id.* at 848 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). Plaintiff fails to allege any supervisory deficiency sufficient to establish any of these elements. Plaintiff has not plausibly alleged the Sheriff was aware of any facts from which he could infer Plaintiff was at a substantial risk of harm. Because Plaintiff cannot allege any such facts, Plaintiff fails to establish the Sheriff actually drew any such inference. Lastly, Plaintiff has not alleged there were reasonable steps the Sheriff could have taken to alleviate any risk. Plaintiff merely suggests the Sheriff endorses this training; however, absent any finding or notice the training was unlawful, Plaintiff fails to establish any constitutional tort.

### 2.   *The Sheriff Is Entitled to Qualified Immunity*

For the reasons discussed above and, even assuming Plaintiff could successfully show the Sheriff personally violated his Fourteenth Amendment rights under the above framework, the Sheriff enjoys qualified immunity unless Plaintiff can also show the law was clearly established at the time of the constitutional violation. *Riggins v. Goodman*, 572 F.3d 1101,1107 (10th Cir. 2009).

To be clearly established, "[t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (internal quote marks omitted). The contours of a particular right are generally not "sufficiently clear" to put a reasonable official on notice unless a plaintiff (1) identifies "an on-point Supreme Court or published Tenth Circuit

decision," or (2) shows "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (internal quote marks omitted). Courts must not define the relevant constitutional right "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, the clearly established law must be "particularized" in granular fashion to the facts of the case. *Id.*

Critically, just as the constitutional violation question in this claim does not turn on whether Individual Defendants violated Plaintiff's constitutional rights by restraining him, the clearly-established-law question does not turn on whether existing precedent would have put reasonable detention center officers in their position on notice that restraining Plaintiff would violate his constitutional rights. Instead, to satisfy the second part of the qualified-immunity test in the context of the supervisory-liability claim against the Sheriff, Plaintiff must show "clearly established law ... would ... have put a reasonable official in [the Sheriff's] position on notice his <u>supervisory conduct</u> would" violate Plaintiff's constitutional rights. *Cox*, 800 F.3d at 1247 (emphasis added). That is, Plaintiff must "identify a case where an offic[ial] acting under similar circumstances as [the Sheriff] was held to have violated" the Constitution. *Pauly*, 137 S. Ct. at 552. Thus, before this Court can determine the law was clearly established in favor of Plaintiff, he must identify a case where an official acting in a situation similar to the Sheriff was held to have violated the Constitution under a supervisory liability theory for engaging a contractor like Garcia to provide tactical and weapons training including the use of NDRs. *Id.*; *see also Cox*, 800 F.3d at 1247.

In the absence of any allegation the Sheriff was aware of any previous unconstitutional incidents involving use of NDRs, the restraint of a drunken detainee like Plaintiff, or the impropriety of engaging a contractor like Garcia, none of Plaintiff's allegations "place[] the ...

constitutional question" here "beyond debate," as the Supreme Court repeatedly requires. ***Pauly***, 137 S. Ct. at 551 (quoting ***Mullenix v. Luna,*** 136 S. Ct. 305, 308 (2015)); ***Cox***, 800 F.3d at 1247.

Accordingly, to the extent Plaintiff fails to tether his clearly-established-law analysis to the "'particularized' ... facts" of any case decided before June 23, 2018—which failure is evident from the Complaint's face—the Sheriff is entitled to qualified immunity on Plaintiff's supervisory liability Claim and this claim must be dismissed as a matter of law. ***Creighton***, 483 U.S. at 640.

**E. Plaintiff Fails to Establish an Excessive Force Claim Against Individual Defendants**

Plaintiff alleges Defendants Channel, Martinez, Thompson, Recor, Penny, Piscoya, Wilson, Coble, and Erickson violated his Fourth and Fourteenth Amendment right to be free from the use of excessive force. [ECF 1 ¶¶ 90-107]. For multiple reasons, the claim as pleaded fails.

A pretrial detainee can state an excessive-force claim by alleging "the force purposely or knowingly used against him was objectively unreasonable." ***Kingsley v. Hendrickson***, 135 S. Ct. 2466, 2473 (2015). In excessive-force cases arising out of jails, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" ***Id.*** (quoting ***Graham v. Connor***, 490 U.S. 386, 396 (1989)). Ultimately, several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." ***Id.***

Plaintiff alleges two discrete uses of excessive force. First, Plaintiff claims Deputies used excessive force against him by taking him to the ground. Second, Plaintiff alleges use of the NDR was excessive. Plaintiff further alleges certain unnamed and unknown deputies failed to intervene in the use of force. Even assuming, *arguendo*, the Deputies' actions constituted excessive force,

which Defendants do not concede, Plaintiff fails to allege which Defendants would be liable for this use of force. *See* Section II.A, *supra*. Plaintiff's claim should be dismissed on this basis alone.

### 1.   *Insufficient Time Existed to Impose Liability for an Alleged Failure to Intervene*

Detention officers can be held liable if they fail to intervene to prevent another detention officer's use of excessive force upon a pretrial detainee. *See, e.g.*, **Estate of Booker v. Gomez**, 745 F.3d 405, 422 (10th Cir. 2014). For liability to attach, however, a defendant must have had a realistic opportunity to intervene to prevent the harm from occurring. **Id.**

Plaintiff alleges some unidentified Individual Defendants failed to intervene. [ECF 1 ¶¶ 45, 50, 99, 103]; *see also* Section II.A, *supra*. Plaintiff's allegations, however, fail to specify what actions any of the Defendants could have taken to intervene, which Defendants were in a position to intervene, there was ample time to intervene, or any attempted intervention would have been successful. Plaintiff similarly fails to allege who participated in the restraint, who witnessed the restraint, or why the force used was excessive. Plaintiff's claim for failure to intervene is thus too speculative to "nudge [his] claim across the line from conceivable to plausible." **Twombly,** 550 U.S. at 555, 570; *see also* **Montano v. City of Chicago**, 535 F.3d 558, 569 (7th Cir. 2008) (summary judgment appropriate on "failure to intervene" claim where plaintiffs did not establish the officer "is informed of the facts that establish a constitutional violation and . . . had a realistic opportunity to intervene to prevent the harm from occurring.").

### 2.   *Sufficient Facts Are Lacking on the Excessive Force Allegedly Used During the Restraint*

Second, Plaintiff claims Defendants used excessive force when they used the NDR or when Plaintiff was restrained. As stated, however, Plaintiff fails identify what Defendants were involved and what actions they are alleged to have taken. *See* Section II.A, *supra*. Importantly, Plaintiff fails to explain how the use of an NDR relates to his claim of excessive force because Plaintiff does not

claim to have suffered any injury because of the NDR. *Scott v. City of Alb.*, 711 F. App'x 871, 880 (10th Cir. 2017). Plaintiff also fails to allege how the restraint was excessive. Because Plaintiff self-servingly suggests he was not acting aggressively or otherwise resisting Deputies, Plaintiff's allegations may, at first blush, seem sufficient to state a plausible claim of excessive force. *See Kingsley*, 135 S. Ct. at 2473. Nonetheless, Plaintiff cannot cite to any "existing precedent plac[ing] the conclusion [Defendants] acted unreasonably in these circumstance 'beyond debate.'" *Mullenix*, 136 S. Ct. at 309 (quoting *Al-Kidd*, 563 U.S. at 741).

Further, Plaintiff relies on *Kingsley*'s general proposition that any use of force against a pretrial detainee must be objectively reasonable under the circumstances–such reliance is misplaced. [ECF 1 at p. 30 n.1]; *Mullenix*, 136 S. Ct. at 308 (emphasizing the clearly-established inquiry in qualified-immunity cases "must be undertaken in light of the specific context of the case, not as a broad general proposition") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "Such specificity is especially important in the Fourth Amendment context," where the Supreme Court has recognized it is "'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 308. In light of *Kingsley*'s adoption of the objective-reasonableness standard for Fourteenth Amendment excessive-force claims of pretrial detainees, *Mullenix*'s specificity requirement has equal cogency in the Fourteenth Amendment excessive-force context, where the Court must also consider qualified immunity. *E.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) (so concluding in *Bivens* context); *Perry v. Durborow*, 892 F.3d 1116, 1126-27 (10th Cir. 2018). And, because Plaintiff cannot cite any existing precedent "'squarely govern[ing]'" this situation, the Court should find Individual Defendants are entitled to qualified immunity as to Plaintiff's First Claim for Relief. *See Mullenix*, 136 S. Ct. at 310.

**F.   The Generalized Fourteenth Amendment Unconstitutional Punishment Claim Fails Too**

Plaintiff fails to allege facts sufficient to establish he was subjected to unconstitutional punishment. As stated, Plaintiff fails to identify what Defendants were involved and what actions they are alleged to have taken. [ECF 1 ¶¶ 131, 132]; *see* Section II.A, *supra*. Plaintiff seemingly complains the SOG's use of NDRs or his restraint constituted punishment under the Fourteenth Amendment. [ECF 1 ¶¶ 131, 132]. Plaintiff, however, fails to explain how or why this is so.

The United States Supreme Court has held "[d]ue process requires a pretrial detainee not be punished." ***Bell v. Wolfish***, 441 U.S. 520, 535 (1979). Whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or is incident to another legitimate government purpose. ***Id.*** at 538 n.16. Plaintiff is unquestionably subject to security measures reasonably employed by jail and correctional officials. ***Bell***, 441 U.S. at 540; ***Allen v. Illinois***, 478 U.S. 364, 373-74 (1986) (detainees may "be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished."); ***Allison v. Snyder***, 332 F.3d 1076, 1079 (7th Cir. 2003); ***Thielman v. Leean***, 282 F.3d 478, 483 (7th Cir. 2002). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" ***Bell***, 441 U.S. at 540. "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." ***Id.*** at 561. "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." ***Id.*** at 537.

To determine whether a jail official may be liable for imposing an unconstitutional punishment, a court must consider two questions. "First, [the court] must ask whether an 'expressed intent to punish on the part of detention facility officials' exists." ***Blackmon v. Sutton***,

734 F.3d 1237, 1241 (10th Cir. 2013) (quoting *Bell*, 441 U.S. at 538). If the answer to that question is no, "a plaintiff may still prove unconstitutional punishment by showing the restriction [or condition] in question bears no reasonable relationship to any legitimate governmental objective." *Id.* Because the government has a legitimate penological interest in managing facilities where pretrial detainees are detained, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment." *Bell*, 441 U.S. at 540. "In determining whether restrictions or conditions are reasonably related to the [g]overnment's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the Supreme Court's] warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate officials have exaggerated their responses to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 540 n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Here, Plaintiff claims "Defendants' conduct of deploying routinely and against Plaintiff the Special Operations Group ... firing concussion explosives in his direction and violently assaulting Plaintiff ... was not rationally related to a legitimate government objective or was excessive in relation to that purpose[.]" [ECF 1 at ¶ 131]. Plaintiff further alleges, "Defendants conduct constituted unlawful punishment of Plaintiff as a pretrial detainee." [ECF 1 at ¶ 132]. Plaintiff's allegations are the epitome of conclusory statements which, under *Twombly* and *Iqbal* and their progeny, must be rejected and deemed unworthy of the imprimatur of fact.

Plaintiff does not allege any facts plausibly indicating the use of NDRs or the restraint was done to punish him. *See Steward v. Hodges*, 2017 U.S. Dist. LEXIS 113939, at *9 (D.N.M. July 21, 2017) ("sparse" facts in complaint "are insufficient to support a reasonable inference that [an]

Officer ... shot Plaintiff with a beanbag maliciously and sadistically for the very purpose of causing harm, as opposed to acting in a good faith effort to maintain or restore discipline"); ***Anderson v. Virga***, 2017 U.S. Dist. LEXIS 47034, at *4 (E.D. Cal. Mar. 29, 2017) (plaintiff's allegation he was shot by a less-lethal block gun to quell a disturbance in the prison yard was insufficient to support "a plausible inference [the defendant] maliciously and sadistically shot him to harm him").

Plaintiff also fails to specify how the SOG's actions were not "reasonably related to the institution's interest in maintaining jail security" and, without more, are insufficient to maintain a claim of unconstitutional punishment. ***Bell***, 441 U.S. at 540, 547 ("when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.").

Because Plaintiff does not allege any (much less sufficient) facts indicating the force was used to punish him and because he cannot establish the force used was unrelated to any plausible institutional interest (which is the touchstone of the rational basis test), Plaintiff's allegations fail to state a plausible Fourteenth Amendment claim and should be dismissed.

### III.  CONCLUSION

For the foregoing reasons, Defendants request this Court enter an Order: dismissing ECF 1 with prejudice as to all claims on all theories; and granting all other and further relief deemed just and proper.

Dated and respectfully submitted this 6th day of July, 2020.

                                        *s/ Aaron J. Thompson*
                                        Aaron J. Thompson, Esq.
                                        Matthew J. Hegarty, Esq.
                                        HALL & EVANS, L.L.C.
                                        1001 17th Street, Suite 300
                                        Denver, CO 80202
                                        T:  (303) 628-3300
                                        F:  (303) 628-3368
                                        thompsona@hallevans.com
                                        hegartym@hallevans.com
                                        **ATTORNEYS FOR DEFENDANTS STEVE REAMS, MICHAEL RECOR, TYLER PISCOYA, CORY CHANNEL, JOSEPH MARTINEZ, MICHAEL THOMPSON, KYLE PENNY, ANDREW WILSON, SAVANNAH COBLE, ANNA ERICKSON, and BOARD OF COUNTY COMMISSIONERS OF COUNTY OF WELD, COLORADO**

23

**CERTIFICATE OF SERVICE [CM/ECF]**

I hereby certify that, on this 6th day of July, 2020, I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**, with the Clerk of

Court using the CM/ECF system which will send notification of such filing to the following email

addresses:

> **David G. Maxted, Esq.**
> **MAXTED LAW LLC**
> dave@maxtedlaw.com
>
> **Kathryn J. Stimson, Esq.**
> **STIMSON STANCIL LABRANCHE HUBBARD, LLC**
> stimson@sslhlaw.com
>
> *Attorneys for Plaintiff*

> _s/ Marlene Wilson_, Legal Assistant to
> Aaron J. Thompson, Esq.
> Matthew J. Hegarty, Esq.
> HALL & EVANS, L.L.C.
> 1001 17th Street, Suite 300
> Denver, CO 80202
> T:  (303) 628-3300
> F:  (303) 628-3368
> thompsona@hallevans.com
> hegartym@hallevans.com
> **ATTORNEYS FOR DEFENDANTS STEVE REAMS, MICHAEL RECOR, TYLER PISCOYA, CORY CHANNEL, JOSEPH MARTINEZ, MICHAEL THOMPSON, KYLE PENNY, ANDREW WILSON, SAVANNAH COBLE, ANNA ERICKSON, and BOARD OF COUNTY COMMISSIONERS OF COUNTY OF WELD, COLORADO**