IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00945-WJM-STV

TAGE RUSTGI,

        Plaintiff,

v.

STEVE REAMS, in his individual and official capacities,
MICHAEL RECOR, in his individual capacity,
TYLER PISCOYA, in his individual capacity,
CORY CHANNEL, in his individual capacity,
JOSEPH MARTINEZ, in his individual capacity,
MICHAEL THOMPSON, in his individual capacity,
KYLE PENNY, in his individual capacity,
ANDREW WILSON, in his individual capacity,
SAVANNAH COBLE, in her individual capacity,
ANNA ERICKSON, in her individual capacity,
BOARD OF COUNTY COMMISSIONERS OF COUNTY OF WELD, COLORADO,

        Defendants.

_____

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND**

_____

        Defendants Sheriff Steven Reams, Michael Recor, Tyler Piscoya, Cory Channel, Joseph

Martinez, Michael Thompson, Kyle Penny, Andrew Wilson, Savannah Coble, Anna Erickson, and

the Board of County Commissioners of Weld County Colorado ("BOCC") (collectively

"Defendants"), by and through their attorneys, Matthew J. Hegarty, Esq., and Aaron J. Thompson,

Esq., and pursuant to Fed.R.Civ.P. 8 and Fed.R.Civ.P. 12, respectfully submit this Motion to

Dismiss Plaintiff's Amended Complaint ("Complaint") [ECF 50], stating in support as follows:

        **WJM CIV. PRAC. STD. III.D.1:** Counsel for Defendants conferred with counsel for

Plaintiff on this Motion. Although Defendants do not believe the deficiencies below can be cured

by amendment, Defendants asked Plaintiff to consider dismissing some or all claims. Plaintiff declined to dismiss any claim. The parties were unable to stipulate to any appropriate amendments.

## I. INTRODUCTION

Plaintiff brings this action under 42 U.S.C. § 1983 and it concerns Plaintiff's detention at the Weld County Jail ("WCJ") due to his extreme intoxication. [ECF 50 ¶¶ 30, 31]. While detained, Plaintiff exhibited unpredictable and uncontrolled behavior, which necessitated Plaintiff's restraint by Detentions Division Deputies ("Deputies") of the Weld County Sheriff's Office ("WCSO").

Plaintiff asserts four claims: (1) Excessive Force – Individual Liability, allegedly in violation of the Fourth and Fourteenth Amendments; (2) Excessive Force – Supervisory Liability, allegedly in violation of the Fourth and Fourteenth Amendments; (3) *Monell* Liability, allegedly in violation of the Fourth and Fourteenth Amendments, and; (4) an alleged Fourteenth Amendment Substantive Due Process Violation. For the below reasons, Plaintiff's claims should be dismissed because he fails to allege sufficient facts to maintain them, they are otherwise precluded as a matter of law, and all Defendants named in their individual capacities are entitled to qualified immunity.

## II. ARGUMENT

As a threshold matter, this Court may consider the WCJ surveillance video without converting Defendants' Motion to Dismiss into a Motion for Summary Judgment. It is well settled the Court may consider materials outside of the Complaint in the circumstances presented here. First, twenty years ago, the Tenth Circuit reasoned:

> [I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.

*GFF Corp. v. Assoc. Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Pernick v. Computershare Tr. Co.*, 136 F. Supp. 3d 1247, 1251 n.2 (D. Colo. 2015); *Smith v. U.S.*, 2014 U.S. Dist. LEXIS 163547, *16 (D. Colo. Nov. 20, 2014). The policy reasons behind this well-settled directive of law are as follows:

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. <u>When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.</u>

*GFF Corp.*, 130 F.3d at 1385 (emphasis added). And factual allegations contradicting such documents are <u>neither</u> well-pleaded <u>nor</u> able to be taken as true. *See id.*

Second, the United States Supreme Court emphasized the Court <u>must</u> consider, at the Rule 12 stage, any documents or things the Complaint incorporates. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]"). The Tenth Circuit has issued the same directive. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *TMJ Implants, Inc. v. Aetna, Inc.*, 498 F.3d 1175, 1180 (10th Cir. 2007); *see also LNV Corp. v. Hook*, 2015 U.S. Dist. LEXIS 162361, *7-8 (D. Colo. Dec. 3, 2015) ("In considering a Rule 12(b)(6) motion, however, the court may also consider ... documents incorporated by reference[.]").

Courts have similarly considered video in deciding a Motion to Dismiss. *Jackson v. Gatto*, 2014 WL 2743130, *6-7 (D. Colo. June 17, 2014) (considering video on Motion to Dismiss where video was specifically referenced in the operative pleading) (citing *Hyung Seok Koh v. Graf*, 2013 WL 5348326, *10 (N.D. Ill. Sept. 24, 2013) (in deciding a motion to dismiss, the court considered

an "interrogation video in conjunction with [the plaintiff's] complaint"); *Chamberlain v. City of White Plains*, 2013 WL 6477334, *7 (S.D.N.Y. Dec. 10, 2013) (court considered audio-video recordings captured by camera mounted on defendant's taser without converting motion to dismiss to motion for summary judgment); *Winston v. Bauer*, 2010 WL 3811314, *5 (W.D. Pa. Sept. 21, 2010) (in deciding defense motion to dismiss plaintiff's excessive force claim, court considered video footage of the incident submitted in support of the motion to dismiss; the videotape in question had been referenced in the complaint and was integral to certain of plaintiff's claims)).

On the basis of the foregoing principles, the Court may consider the existence and contents of the surveillance videos and body camera footage without regard to Rule 56 on the basis the Complaint refers to both. [*See* ECF 50 ¶¶ 32, 36, 39, 42, 47, 49, 50, 54, 58, 89 (surveillance video); and ¶¶ 13, 58, 89 (body cameras)]. Plaintiff also incorporates multiple screenshots from the surveillance video. [*Id.* at ¶¶ 33, 37, 38, 43 46, 48, 50]. Thus, these materials are central to Plaintiff's claims. Furthermore, Plaintiff has not lodged any objection as to their authenticity and, after conferral, has not indicated any objection to their inclusion in Defendants' Motion.

## A.  Relevant Factual Background, Including in Contravention of Complaint's Allegations

Review of the surveillance video[1] demonstrates when Plaintiff entered the WCJ, he was so highly intoxicated he could not sit on his own. [**Exh. A**, 00:50]. Almost immediately after arrival, Plaintiff became verbally abusive toward Deputy Recor, the arresting officer, and a Patrol Deputy who was also present. [00:50-03:45]. At this time, Deputy Recor was the only jail staff present. As Plaintiff became increasingly unpredictable and abusive, Deputy Recor called for assistance.

---

[1] Surveillance video is **Exhibit A** and was conventionally submitted to the Court via secure ShareFile link in accordance with Defendants' Unopposed Motion for Leave to Restrict Access, filed herewith. Citations to the **Exhibit A** reference the time stamp in the lower right corner. Defendants also include footage from a second surveillance camera (**Exhibit B**); body camera Footage from Deputy Penny (**Exhibit C1-C4**); and body camera footage from Deputy Piscoya. (**Exhibit D1-D2**).

[03:44]. Deputies Coble and Erickson responded. [04:16]. Plaintiff also refused to follow simple staff directives and protocols at one point standing up and disobeying commands to sit down until the arresting officer approaches. [05:59]. Due to Plaintiff's behavior, Deputies Penny and Piscoya enter the booking area to provide additional assistance; Plaintiff immediately begins to be verbally abusive towards these officers. [06:15]. When the Patrol Deputy goes to leave the jail, he attempts to calm Plaintiff to no avail. [09:19]. Shortly thereafter, a female detainee is brought into the booking area and is sat on the same bench as Plaintiff. [11:14]. Plaintiff almost immediately slides toward the female detainee. [*Id.*] Deputy Wilson, who had just entered the booking area, instructs Plaintiff to move back to where he was seated – Plaintiff refuses. [11:29-11:56]. Wilson approaches Plaintiff and again instructs him to move away from the female detainee – Plaintiff refuses. [*Id.*] The female detainee's arresting officer and Deputy Recor, also approach Plaintiff and instruct him to move away from the female detainee – Plaintiff refuses a third time. [*Id.*] Wilson had to physically slide Plaintiff away from the female detainee. [*Id.*]. The female detainee, apparently disturbed by Plaintiff's behavior, moves away from Plaintiff. [12:23].

Plaintiff begins yelling as a nurse attempts to examine him. [13:01]. Sergeants Martinez and Channel next enter the area. [13:04-36]. Plaintiff continues to yell abuse while the nurse examines him. [14:10]. Martinez attempts to calm Plaintiff to no avail. [15:10]. Plaintiff then begins the intake process all the while continuing to be disruptive. [17:00]. Plaintiff's handcuffs are removed. [18:00]. Throughout the patdown search and collection of Plaintiff's property, Plaintiff becomes increasingly disruptive and fails to follow Deputies' orders. [17:00-25:00]. Plaintiff is repeatedly instructed to face the wall or Deputy Recor. [*Id.*] Despite these instructions, Plaintiff continues to turn around and confront other deputies on approximately twenty (20) separate occasions, points in Deputies' faces, is verbally abusive, and becomes increasingly

agitated. [*Id.*] At this point there are three police officers and at least eight WCJ staff present to deal with Plaintiff – Plaintiff's disruption to the orderly operation of the facility should not be understated. [*Id.*] Recor attempts on multiple occasions to have Plaintiff take a breathalyzer test but Plaintiff is so agitated he either cannot or will not comply with that request. [*Id.*] Instead, Plaintiff continues to berate, point at, and be aggressive toward Deputies. [23:52-25:00]. Finally, Martinez signals Plaintiff needs to be removed from the area. [25:31]. By this time Sergeant Channel [25:05] and Deputy Erickson [19:56] had already left the area. As Plaintiff walks toward the cell, his behavior becomes increasingly unpredictable as he again attempts to confront the female detainee, [25:55] and then swats at the air with his hand. [25:59]. While the video does not capture what occurs in the cell, Sergeant Martinez can be seen giving a hand signal instructing Plaintiff to get on the ground. [26:51]. The first Nova Distraction Round ("NDR") is fired. [26:57]. At that time, Coble and Erickson were down the hall in the booking area some 50-100 feet away and could not see into the cell. [*See* ECF 50 at ¶ 50]. Sergeant Channel and Sergeant Thompson were nowhere in the booking area. Sergeant Channel re-enters the booking area carrying a jail uniform. [27:06]. As Channel walks down the hall, the second NDR is fired. [27:12]. There is a flurry of activity at the cell as Plaintiff is changed out of his street clothes, and various Deputies and nurses go to the cell to assist and check on Plaintiff. [28:10-32:20]. Thompson enters the area for the first time, more than eight minutes after any force was used against Plaintiff. [35:49].

In light of the foregoing, the following allegations of Plaintiff are materially contradicted by **Exhibit A** and must not be taken as true for purposes of this Motion: he "did nothing aggressive or intimidating toward anyone. No security issue or crisis existed. The scene was calm, and several staff went about their business. Plaintiff sat there and waited and did nothing to justify an escalation or use of force against him" [ECF 50 ¶ 32]; "Plaintiff sat compliantly on a bench in the lobby area"

[¶ 34]; "Plaintiff complies with order from deputies" [¶ 43]; and "Plaintiff posed no threat to anyone, did nothing threatening or intimidating" [¶ 44]. *See GFF Corp.*, 130 F.3d at 1385. It is also important to note, throughout all of these events, other detainees were present and Defendants needed to attend to those detainees. Plaintiff's over-the-top actions thus created a safety and security concern within the jail and consumed a disproportionate share of WCJ resources.

## B.  Individual Defendants and Sheriff Reams are Entitled to Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to meet a strict two-part test. Specifically, the plaintiff must show: (1) "the defendant's actions violated a federal constitutional or statutory right," and (2) "the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

On the first prong, the issue is whether Defendants' actions as alleged in the complaint violated a constitutional right. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). On the second prong, the issue is whether it would have been clear to a defendant the conduct was unlawful in the situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014); *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (right violated "must be defined at the appropriate level of specificity"). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows the right must be as the plaintiff maintains." *Thomas*, 765 F.3d at 1194. "While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability." *Id.* The essence of prong 2 is whether the

state of the law at the time of the incident gave the defendant "fair warning" the alleged conduct was unconstitutional. ***Tolan v. Cotton***, 572 U.S. 650, 655-56 (2014) (per curiam). A court may address either prong first depending on the situation in the particular case. *See **Pearson v. Callahan***, 555 U.S. 223, 236 (2009). But "existing precedent" must put the constitutional question "beyond debate." ***Kisela v. Hughes***, 138 S. Ct. 1148, 1153 (2018) (per curiam).

Plaintiff contends the use of force by Individual Defendants was objectively unreasonable and excessive [ECF 50 ¶¶ 1, 9, 12, 54, 55, 83, 84, 86, 106, 108-113, 118, 144]; even in light of Plaintiff's level of intoxication and attendant behavior. [*Id.* ¶¶ 30, 31; *see* Section II.A, *supra*]. Even if this Court could infer a constitutional violation, Plaintiff can point to no binding Supreme Court or Tenth Circuit precedent establishing Individual Defendants' acts were unreasonable. Plaintiff cannot establish the use of NDRs, or a single blow, under similar circumstances, was excessive force or otherwise prohibited by clearly established law. Indeed, Defendants could find no case holding the use of NDRs was unconstitutional in any context in any United States Court of Appeals. Nor could Defendants find any case law suggesting a Deputy could be liable for failing to intervene after a single strike lasting mere moments. The law simply does not require Deputies be clairvoyant as would be required to prevent a single strike.

Thus, Plaintiff cannot show the law was as he maintains or was clearly established, and this Court should dismiss Plaintiff's claims against Individual Defendants and the Sheriff as discussed more fully below. ***Cox v. Glanz***, 800 F.3d 1231, 1248 (10th Cir. 2015).

## C. Plaintiff's Municipal Liability Claim Fails as a Matter of Law

### *1. The Official Capacity Claim Against the Sheriff is Redundant and Unnecessary*

Plaintiff sued both the Sheriff in his official capacity and the BOCC. Both claims amount to actions against the County and are thus redundant. *See **Kentucky v. Graham***, 473 U.S. 159, 166

(1985) ("an official capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (bringing "a claim against [a sheriff] in his official capacity ... is the same as bringing a suit against the county"). Thus, Plaintiff's official capacity claims against the Sheriff should be dismissed as redundant.

### 2. *Plaintiff's Municipal Liability Claim Fails as a Matter of Law*

Local governments may not be sued under § 1983 for an injury inflicted solely by their employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). *Monell* explicitly rejected the notion of entity liability based on either a *respondeat superior* or vicarious liability theory. *Id.* at 694. Thus, absent a municipal custom, policy, practice, or inadequate training, Plaintiff's claim must fail. Furthermore, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of L.A. v. Heller*, 475 US. 796, 799 (1986)). As discussed more fully in Sections II.D, II.E, and II.F *infra*, because neither the Sheriff, nor Individual Defendants, violated Plaintiff's constitutional rights, Plaintiff's *Monell* claim must be dismissed.

### a. *Plaintiff fails to establish his inadequate training claim*

Plaintiff makes vague claims about the scope of training provided but fails to allege facts showing the training was deficient or unconstitutional in any concrete way. Stripped of conclusory and formulaic recitations, Plaintiff's allegations boil down to assertions Sheriff Reams provided weapons training involving Kel-Tec Shotguns ("KSG"s) [ECF 50 ¶¶ 4-5, 8, 74, 76, 83, 92]; Sheriff Reams hired Joseph Garcia ("Garcia") to train WCJ staff, which was somehow improper [*id.* ¶¶ 3, 4, 63, 69, 71, 73, 74, 77, 78, 84]; and the training was "militarized." [*id.* ¶¶ 4, 5, 62, 64, 65, 73].

In the absence of an explicit policy or an entrenched custom, 'the inadequacy of police training may serve as a basis of § 1983 liability ... where the failure to train amounts to a deliberate

indifference to the rights of persons with whom the police come into contact.'" ***Allen v. Muskogee,*** 119 F.3d 837, 841 (10th Cir. 1997) (quoting ***City of Canton v. Harris***, 489 U.S. 378, 392 (1989)). The "well established" elements of a § 1983 claim for inadequate use of force training for police require a showing: "(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." ***Id.*** Even assuming, *arguendo*, Plaintiff can establish the second element, Plaintiff fails to provide any support for the first, third, or fourth elements.

As to the first element, Plaintiff alleges Defendant Penny "smashed" his face into the ground but does not detail how this was done. [ECF 50 ¶¶ 1, 51, 80, 101]. Plaintiff fails to allege whether he was kicked, punched, restrained, tackled, or hit with an object. Plaintiff certainly does not tether this conduct to any inadequate training. Next, Plaintiff alleges the use of the contactless NDR was somehow excessive but does not state, with any specificity, how or why this is so. NDRs are loud but create no contact. Thus, the NDR uses the least amount of force possible—no force— and its use was well within constitutional boundaries and in line with penological objectives.

As to the third element,

> [t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  In most instances, notice can be established by proving the existence of a pattern of tortious conduct.

***Carr v. Castle***, 337 F.3d 1221, 1229 (10th Cir. 2003). Furthermore, a plaintiff must show "the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights," policymakers reasonably can be said to have been deliberately indifferent to the need. ***Brown v. Gray***, 227 F.3d 1278, 1288 (10th Cir. 2000) (quoting ***Harris***, 489 U.S. at 390). It is not enough to allege "general deficiencies" in a training program. ***Lopez v. LeMaster***, 172 F.3d 756, 760 (10th Cir. 1999). Rather Plaintiff "must identify a specific deficiency in the training program closely related to his ultimate injury and must prove the deficiency in training actually caused his jailer to act with deliberate indifference to his safety." ***Id.***

Here, there is no allegation the training was inadequate or attributable to the County Defendants' deliberate indifference. Although Plaintiff alleges the BOCC is liable "for maintaining unconstitutional as well as deliberately indifferent" training [ECF 50 ¶ 135]; this lone allegation is simply an unadorned regurgitation of the legal standard and provides no basis for this Court to conclude the BOCC was deliberately indifferent to the training needs of Deputies.

Additionally, Plaintiff fails to allege any longstanding or wide-spread practice of Deputies misusing NDRs or using excessive force of the kind alleged here from which the BOCC could ascertain a need for different or additional training. In fact, Plaintiff fails to identify any specific prior incident where Deputies misused NDRs or delivered a single strike to a detainee. While Plaintiff alleges Deputies used rubber bullets and tasers against detainees in 2017 and 2018 [ECF 50 at ¶¶ 94, 95, 98(a)-(h)]; Plaintiff does not indicate factually that the use of rubber bullets or tasers in those cases was found to be wrongful or unconstitutional and, moreover, ignores the fact the Individual Defendants did not use rubber bullets or tasers against Plaintiff. As such, there is no indication the BOCC was aware of any misuse of NDR rounds now or at any time previously or was deliberately indifferent to the methods used to control extremely intoxicated individuals. Tellingly, where Plaintiff does discuss the use of NDRs and uses of force similar to that allegedly used against Plaintiff, those allegations are bare, conclusory, and contain no specific factual

averments in support of Plaintiff's claims, contrary to the dictates of **Twombly**, 550 U.S. 544. [ECF 50 ¶¶ 96, 97, 101]. Instead Plaintiff blanketly announces such use occurred and it was wrongful. Without more, Plaintiff fails to meet his pleading burden and this claim should be dismissed.

Moreover, because Plaintiff alleges rubber bullets and tasers were used against detainees in 2017 and 2018, yet neither were used in this case, Plaintiff implicitly concedes the BOCC and Sheriff Reams acted to address the force used at WCJ. Indeed, it could be reasonably inferred from Plaintiff's Complaint, the County Defendants backed away from the use of rubber bullets, and moved toward contactless NDR rounds. Importantly, Plaintiff does not claim to have suffered any injury from the NDR rounds. Thus, Plaintiff's claims of deliberate indifference are not well-taken.

Last, although "a pattern of similar violations might not be necessary to show deliberate indifference," where the need to train in a particular area is "so obvious and the likelihood of constitutional violations [so] highly predictable" the municipality, by failing to train, can be said to be deliberately indifferent, **Connick**, **v. Thompson**, 563 U.S. 51, 63 (2011), Plaintiff does not aver facts establishing the need to train was so obvious the "single incident" exception should apply here. **Zartner v. City & Cnty. of Denver**, 242 F. Supp. 3d 1168, 1173 (D. Colo. 2014); **J.V. v. Alb. Pub. Sch.**, 813 F.3d 1289, 1298 (10th Cir. 2016) ("bare allegation" of failure to train "is not nearly enough to show deliberate indifference"). Plaintiff has not shown the BOCC was "on notice of the need for more or better training" and has not pointed to a single incident similar to this one. **Id.**; **Sandberg**, 7727 F. App'x 950, 964 (10th Cir. 2018) (complaint does not "describe any prior incidents that would have established a pattern or practice ... that could cause us to view subsequent inaction as evidence of a policy of deliberate indifference").

Also fatal to Plaintiff's claim, is his failure to allege Garcia's training program was inadequate or suffered from any "glaring omission" from which "one could reasonably say the use

of excessive force against the plaintiff ... was a highly predictable consequence of the omission." *Allen*, 119 F.3d at 845. Plaintiff also does not allege facts to show the training was "inadequate as compared to any recognized or accepted law enforcement standards." *Id.* Plaintiff has thus failed to demonstrate deliberate indifference with regard to Deputy training.

As to the fourth element, Plaintiff fails to sufficiently allege a direct causal link between the constitutional deprivation and inadequate training. "[I]n order for liability to attach for failure to train, 'the identified deficiency in a city's training program must be closely related to the ultimate injury,' so that it 'actually caused' the constitutional violation." *Brown*, 227 F.3d at 1290 (quoting *Harris*, 489 U.S. at 390). "[P]roving . . . a [governmental entity] itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and [courts] must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into *respondeat superior*." *Connick,* 563 U.S. at 70 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 406, 410 (1997)). Along this same line, the Tenth Circuit has commented that where a plaintiff claims that a governmental entity "has not directly inflicted an injury," but nonetheless has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure the [governmental entity] is not held liable solely for the actions of its employee." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Bryan Cnty.*, 520 U.S. at 405)). Here, there is no allegation supporting the conclusion the training provided was closely or directly linked to anyone's decision to use force against Plaintiff. "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770(10th Cir. 2013) (citing *Monell* , 436 U.S. at 691-92).

Plaintiff fails to allege sufficient facts to support the existence of any deficiency in the training program with respect to the use of force, and Plaintiff fails to explain how any alleged deficiency is so "closely related" to his restraint or the use of NDRs that it caused the alleged constitutional deprivation. As such, Plaintiff has failed to "go beyond mere allegations that officer training is deficient" to properly establish a claim for inadequate training. *Newell*, 276 F.Supp.2d at 1158 (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)).

Furthermore, Plaintiff alleges no facts from which it can be determined the BOCC was on notice additional, "specific training was necessary to avoid [a] constitutional violation." *Connick*, 563 U.S. at 63. Even if prior misuses of the NDR or other constitutionally excessive restraints existed, this addresses only the threshold matter; it does not address <u>notice</u> of prior violations or suffice to allege the BOCC was aware specific additional training was needed. *Leadholm v. City of Commerce City*, 2017 U.S. Dist. LEXIS 70657, *20 (D. Colo. May 9, 2017) ("showing merely additional training would have been helpful in making difficult decisions does not establish municipal liability") (citing *Connick*, 563 U.S. at 68). As in the cases above, aside from speculation and conclusory statements, there are no allegations in Plaintiff's Complaint that give rise to an inference the County Defendants established a deliberate policy or custom that was the moving force behind Plaintiff's injury. All of his allegations are the sort of "naked assertions devoid of further factual enhancement" that *Iqbal* instructs courts to disregard. 556 U.S. at 678.

Plaintiff claims the training and policies are constitutionally inadequate but, other than general averments about Garcia's YouTube videos and persona, Plaintiff fails to identify any specific training or policy or why such training or policy is inadequate or unconstitutional. For example, Plaintiff alludes only vaguely to better or proper use of KSGs, baldly alleging WCSO's use is "contrary to the appropriate use of such weaponry and is extremely dangerous in the jail

setting." [ECF 50 at ¶ 6]. Plaintiff, however, does not explain what policy or training caused unconstitutional use in this case, identify substantially similar past unconstitutional use (i.e., that involving no force prior to a takedown), suggest what proper use in a jail context might entail, or suggest the use of KSGs is *per se* unconstitutional in the corrections context.

Accordingly, this Court should dismiss Plaintiff's inadequate training claim.

> *b.   Plaintiff fails to establish his municipal custom, practice, or policy claim*

Plaintiff must show "(1) official policy or custom, (2) causation, and (3) state of mind" for municipal liability to exist. *Schneider*, 717 F.3d at 769. A claim failing to identify a specific policy, to explain how it caused the alleged violation, or to sufficiently allege deliberate indifference, should be dismissed. *See Sandberg*, 727 F. App'x at 964 (complaint failed to "set[] out the text of any [] policy"); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277 (10th Cir. 2019) (affirming Rule 12 dismissal); *Bryan Cnty.*, 520 U.S. at 404 (*Monell* and its progeny require a "widespread" municipal policy or custom which was the "moving force" behind the injury to be alleged)). Taken together, an entity is liable only if the alleged conduct resulted from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." *Connick*, 563 U.S. at 61. But an alleged policy or custom must consist of much more than what happened to the plaintiff. *E.g.*, *Griego v. City of Alb.*, 100 F. Supp. 3d 1192, 1215 (D.N.M. 2015) ("[A]t the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted.").

Plaintiff fails to identify a specific unconstitutional custom or policy promulgated on behalf of the BOCC. Plaintiff also fails to identify a causal link between the BOCC's actions or policies and any constitutional deprivation. Despite the dictates of *Twombly*, Plaintiff merely invokes the rhetoric of a claim and describes the elements of a claim but provides no facts in support.

Plaintiff ignores well-established Tenth Circuit precedent holding a § 1983 municipal liability claim must include factual allegations that a particular municipal custom or policy was the moving force behind the constitutional injury in order to withstand a Rule 12(b)(6) dismissal. *See, e.g.*, ***Pyle v. Woods***, 874 F.3d 1257, 1266 (10th Cir. 2017) (affirming Rule 12(b)(6) dismissal of municipal-liability claim where the plaintiff only provided a formulaic recitation of the elements of the claim, and failed to provide sufficient factual allegations of a link between the injury and the municipal policy or custom); *see* ***Mocek v. City of Alb.***, 813 F.3d 912, 934 (10th Cir. 2015) (affirming Rule 12(b)(6) dismissal of complaint that asserted a municipal policy was the moving force behind the injury, but cited "no particular facts in support of these threadbare recitals of the elements of a cause of action"); ***Moss v. Kopp***, 559 F.3d 1168, 1169 (affirming Rule 12(b)(6) dismissal because plaintiffs failed to allege any conduct by sheriff or county apart from employees' actions); ***Beedle v. Wilson***, 422 F.3d 1059, 1074 (10th Cir. 2005) (affirming Rule 12(b)(6) dismissal where plaintiff failed to identify a municipal policy or custom causing plaintiff's injury).

Plaintiff seems to suggest Sheriff Reams was on notice of the allegedly unconstitutional nature of Garcia's training due to vague reports of training at other jails, or because the training was "militarized" – whatever that undefined term means. Courts in this District, however, hold vague allegations of being "on notice" are not enough to state a claim. *E.g.*, ***Bauer v. Denver***, 2015 U.S. Dist. LEXIS 87833, *12 (D. Colo. July 7, 2015) ("[C]onclusory and vague allegation of other publicized cases, in and of itself, cannot support a plausible case of municipal liability. Rather, Plaintiff's complaint has failed to identify any policy or custom employed by Defendant to effectuate the alleged constitutional violation."), *aff'd*, 642 F. App'x 920 (10th Cir. 2016). Plaintiff also appears to rest on his allegation the WCSO has been subjected to some nebulous, undefined "inquiry" by federal authorities. [ECF 50 ¶¶ 11, 94]. Even assuming this is true, it is insufficient

to establish a municipal practice "was the moving force" behind the specific constitutional violation under *Bryan Cnty.*, 520 U.S. at 404, or the BOCC consciously or deliberately chose to disregard a risk of harm after notice under *Harris*, 489 U.S. at 389. Plaintiff's allegations concerning other cases involving Garcia's training, or reference to other dissimilar incidents occurring at the WCJ, alone cannot support a plausible case of municipal liability. Thus, Plaintiff's Complaint fails to identify any policy or custom effectuating any alleged constitutional violation.

Further, Plaintiff must allege the BOCC had "actual or constructive notice" of a training deficiency yet failed to take corrective action. *Connick*, 563 U.S. at 61. The notice-rendering pattern must be of "similar" alleged violations. *Id.* at 62. Plaintiff does not allege substantially similar prior uses of force in the WCJ, nor does he allege facts sufficient to conclude the use of force in any prior incident was unreasonable within the meaning of the Fourth Amendment. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999); *see also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). Also, the mere existence of previous complaints does not suffice to show a municipal custom of permitting or encouraging excessive force. *Mettler*, 165 F.3d at 1205 ("the number of complaints bears no relation to their validity"). A plaintiff must also show the county failed to investigate or take corrective action on any prior meritorious excessive force claim. *See id.*; *Lewis v. Bd. of Sedgwick Cnty. Comm'rs*, 140 F. Supp. 2d 1125, 1138 (D. Kan. 2001) (county entitled to judgment where plaintiff failed to present any evidence county failed to take corrective action on any prior meritorious complaint); *Gantos v. City of Colo. Springs Police Dep't*, 2008 U.S. Dist. LEXIS 12465, *9 (D. Colo. Feb. 20, 2008) ("Absent some showing the previous complaints had merit, and the [police department] avoided or ignored meritorious complaints, such previous complaints do not support a municipal liability claim."). Plaintiff makes

no specific factual allegations concerning the validity of these prior incidents, whether the incidents were investigated internally, or how the incidents were ultimately resolved.

Even if these prior incidents involved constitutionally excessive force, which there is no indication they did, Plaintiffs allegations are still lacking for want of sufficient quantum and want of substantial similarity. *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (to prove "continuing, persistent and widespread" practice, plaintiffs usually offer evidence suggesting similarly situated individuals were mistreated by the entity in a similar way); *Prince v. Cuny*, 423 F. App'x 447, 451 (5th Cir. 2011) ("Nor does the existence of one or two prior incidents indicate [the municipality] was deliberately indifferent."); *Harper v. Se. Ala. Med. Ctr.*, 998 F. Supp. 1289, 1301 (S.D. Ala. 1998) ("[T]he prior incidents must be sufficiently related in time and circumstances to the conduct giving rise to the pending action."); *Mindler v. Clayton Cnty.*, 831 F. Supp. 856, 862 (N.D. Ga. 1993) (finding "three remotely comparable allegations of similar conduct" insufficient to create a question of fact as to municipal liability). As discussed above, Plaintiff fails to provide any similar incident which would put the Defendants on notice the force used or the NDR use was unlawful, unconstitutional, or excessive as the other incidents Plaintiff points to are of an entirely different nature. [ECF 50 ¶¶ 94-100]. Further, Plaintiff provides no context for the Court to evaluate the circumstances surrounding those alleged uses of force.

Plaintiff fails to identify a single similar instance of a prior constitutional violation caused by an inadequate policy or training, much less a sufficient number of instances similar in character and temporally related, so as to put the County Defendants on notice of any deficiency. Further, Plaintiff fails to allege any factual predicate for the need for any different custom, policy, or practice, fails to allege why there is a need for more or different training, and identifies no factual basis for the legal conclusions set forth. [*See generally* ECF 50].

In short, Plaintiff's Third Claim for Relief is full of high-sounding rhetoric attempting to support legal conclusions of liability but is devoid of the particularized factual basis necessary to plausibly set forth a viable claim. Plaintiff's Third Claim for Relief should be dismissed.

**D.  Plaintiff's Supervisory Liability Claim Against the Sheriff Also Fails**

*1.   Plaintiff Fails to Provide Enough Facts to Establish the Elements of Supervisory Liability*

"[I]n a § 1983 lawsuit, supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected, that plaintiff to the deprivation of any rights secured by the Constitution." ***Crocker v. Glanz***, 752 F. App'x 564, 567-68 (10th Cir. 2018) (quoting ***Cox***, 800 F.3d at 1248). Because § 1983 does not authorize liability under a theory of *respondeat superior*, "[a] plaintiff arguing for the imposition of supervisory liability ... must show an affirmative link between the supervisor and the constitutional violation." ***Id.*** "The … affirmative link between a supervisor and the alleged constitutional injury has ... three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." ***Id.***

Personal participation is an essential element in a civil rights action. *See **Bennett v. Passic***, 545 F.2d 1260, 1262-63 (10th Cir. 1976); ***Graham***, 473 U.S. at 166. A supervisor can only be held liable for his or her own deliberate intentional acts. *See **Iqbal***, 556 U.S. at 676; ***Serna v. Colo. Dep't of Corrs.***, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also **Fogarty v. Gallegos***, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). "Section 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates,

implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution[.]'" *Dodds*, 614 F.3d at 1199  (interpreting *Iqbal* and quoting 42 U.S.C. § 1983). As discussed above, Plaintiff can point to no such policy.

Plaintiff could meet the personal-involvement prong via adequate facts showing the Sheriff was responsible for but "failed to create and enforce policies to protect" him from use of NDRs or a singular blow. *Keith v. Koerner*, 843 F.3d 833, 840 (10th Cir. 2016). Here, however, Plaintiff only alleges the Sheriff "had a non-delegable duty to ensure he implemented constitutional training and policies for WCSO. He has failed to do that ... through his own conduct and decision-making, as well as through hiring and working with Joseph Garcia over a period of years to implement the Special Operations Group." [ECF 50 ¶ 63]. This showpiece of conclusory allegations is woefully inadequate. Even though Plaintiff takes umbrage at Garcia's engagement, he never explains why it was unconstitutional or that Sheriff Reams knew it would inexorably lead to a constitutional violation. Plaintiff's allegations concerning Garcia consist of unspecified and unsubstantiated rumors about trainings at other jails [*id.* ¶ 80], or Garcia's purported lack of qualifications [*id.* ¶ 82], even though Plaintiff also admits Garcia conducted trainings all over the country [*id*. ¶¶ 80, 81]. Plaintiff fails to adequately allege the Sheriff's personal participation in a constitutional tort.

Next, to establish causation, Plaintiff must show the Sheriff "set in motion a series of events [he] knew or reasonably should have known" would cause others to deprive him of constitutional rights. *Keith*, 843 F.3d at 847 (quoting *Schneider*, 717 F.3d at 768 ). Apart from taking issue with Garcia's training, which Plaintiff cannot show is wrongful, he fails to meet his causation burden.

Finally, in the context of a Fourteenth Amendment claim like this one, Plaintiff could show the requisite culpable state of mind via adequate facts indicating the Sheriff "acted with deliberate

indifference." *Id.* at 847-48. The deliberate-indifference test has three requirements: (1) the Sheriff was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"; (2) he actually drew the inference; and (3) he was "aware of and fail[ed] to take reasonable steps to alleviate that risk." *Id.* at 848 (quoting *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008)). Plaintiff fails to allege any supervisory deficiency sufficient to establish any of these elements. Plaintiff has not plausibly alleged the Sheriff was aware of any facts from which he could infer Plaintiff was at a substantial risk of harm. Because Plaintiff cannot allege any such facts, Plaintiff fails to establish the Sheriff actually drew any such inference. Lastly, Plaintiff has not alleged there were reasonable steps the Sheriff could have taken to alleviate any risk. Plaintiff merely suggests the Sheriff endorses this training; however, absent any finding or notice the training was unlawful, Plaintiff fails to establish any constitutional tort.

### 2.   *The Sheriff Is Entitled to Qualified Immunity*

For the reasons discussed above and, even assuming Plaintiff could successfully show the Sheriff personally violated his Fourteenth Amendment rights under the above framework, the Sheriff enjoys qualified immunity unless Plaintiff can also show the law was clearly established at the time of the constitutional violation. *Riggins v. Goodman*, 572 F.3d 1101,1107 (10th Cir. 2009).

To be clearly established, "[t]he contours of the constitutional right at issue must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). The contours of a particular right are generally not "sufficiently clear" to put a reasonable official on notice unless a plaintiff (1) identifies "an on-point Supreme Court or published Tenth Circuit decision," or (2) shows "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). Courts must not define the

relevant constitutional right "at a high level of generality." ***White v. Pauly***, 137 S. Ct. 548, 552 (2017) (quoting ***Ashcroft v. al-Kidd***, 563 U.S. 731, 742 (2011)). Instead, the clearly established law must be "particularized" in granular fashion to the facts of the case. ***Id.***

Critically, just as the constitutional violation question in this claim does not turn on whether Individual Defendants violated Plaintiff's constitutional rights by restraining him, the clearly-established-law question does not turn on whether existing precedent would have put reasonable detention center deputies in their position on notice that restraining Plaintiff would violate his constitutional rights. Instead, to satisfy the second part of the qualified-immunity test in the context of the supervisory-liability claim against the Sheriff, Plaintiff must show "clearly established law ... would ... have put a reasonable official in [the Sheriff's] position on notice his <u>supervisory conduct</u> would" violate Plaintiff's constitutional rights. ***Cox***, 800 F.3d at 1247 (emphasis added). That is, Plaintiff must "identify a case where an offic[ial] acting under similar circumstances as [the Sheriff] was held to have violated" the Constitution. ***Pauly***, 137 S. Ct. at 552. Thus, before this Court can determine the law was clearly established in favor of Plaintiff, Plaintiff must identify a case where an official acting in a situation similar to the Sheriff was held to have violated the Constitution under a supervisory liability theory for engaging a contractor like Garcia to provide tactical and weapons training including the use of NDRs. ***Id.***; *see also **Cox***, 800 F.3d at 1247.

In the absence of any allegation the Sheriff was aware of any previous unconstitutional incidents involving use of NDRs, a singular blow to a detainee like Plaintiff, or the impropriety of engaging a contractor like Garcia, none of Plaintiff's allegations "place[] the ... constitutional question" here "beyond debate," as the Supreme Court repeatedly has required. ***Pauly***, 137 S. Ct. at 551 (quoting ***Mullenix v. Luna***, 136 S. Ct. 305, 308 (2015)); ***Cox***, 800 F.3d at 1247.

Accordingly, to the extent Plaintiff fails to tether his clearly-established-law analysis to the "'particularized' ... facts" of any case decided before June 23, 2018—which failure is evident from the Complaint's face—the Sheriff is entitled to qualified immunity on Plaintiff's supervisory liability claim and this claim must be dismissed as a matter of law. *Creighton*, 483 U.S. at 640.

### E.  Plaintiff Fails to Establish an Excessive Force Claim Against Individual Defendants

Plaintiff alleges Defendants Channel, Martinez, Thompson, Recor, Penny, Piscoya, Wilson, Coble, and Erickson violated his Fourth and Fourteenth Amendment right to be free from excessive force. [ECF 50 ¶¶ 102-120]. For multiple reasons, the First Claim as pleaded fails.

A pretrial detainee can state an excessive-force claim by alleging "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). In excessive-force cases arising out of jails, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Ultimately, several factors "bear on the reasonableness or unreasonableness of the force used," including, but not limited to: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Here, Plaintiff alleges two discrete uses of excessive force. First, Plaintiff claims Deputy Penny "smashed his face into the floor." [ECF ¶ 51]. Second, Plaintiff alleges use of the NDR was somehow excessive. Plaintiff further alleges Deputies failed to intervene in either use of force.

As a preliminary matter, and as discussed above, Plaintiff has failed to sufficiently plead any claim of excessive force against Defendant Penny where Plaintiff does not articulate how his injury occurred. While Plaintiff alleges Defendant Penny "smashed his face into the floor," he does

not articulate the means of this alleged action, as required. [ECF 50 at ¶¶ 1, 51, 80, 101]. Plaintiff fails to allege whether he was kicked, punched, restrained, tackled, or hit with an object. The precise type of force used is an undeniably important consideration when assessing a claim of excessive force and Plaintiff's failure to specify what level of force was used or how he was injured is fatal to his claim. ***Brown v. Montoya***, 662 F.3d 1152, 1162 (10th Cir. 2011) ("plaintiff must identify specific acts a specific defendant took which form the basis of a constitutional violation"); ***Pahls v. Thomas***, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("it is incumbent upon a plaintiff to identify specific actions taken by particular defendants in order to make out a viable § 1983").

*1. Insufficient Time Existed to Impose Liability for an Alleged Failure to Intervene*

To be liable under 42 U.S.C. § 1983 for a failure to intervene, the Tenth Circuit has stated "officers must have observed or had reason  to know of a constitutional violation and have had a realistic opportunity to intervene." ***Jones v. Norton***, 809 F.3d 564, 576 (10th Cir. 2015); ***Estate of Booker v. Gomez***, 745 F.3d 405, 422 (10th Cir. 2014) (defendant must have had a realistic opportunity to intervene to prevent the harm from occurring); ***Vondrak v. City of Las Cruces***, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting ***Anderson v. Branen***, 17 F.3d 552, 557 (2d Cir. 1994)).

Plaintiff's allegations focus on the Individual Defendants' opportunity to intervene but ignore the requirement that the Deputies must have knowledge of a constitutional violation as well. First, Plaintiff alleges every Defendant (except Deputies Piscoya, Penny, and Reams) failed to intervene. [*See* ECF 50  ¶¶ 46, 52-55, 57, 111, 112]. Plaintiff bases his theory on the fact Deputies Coble and Erickson covered their ears prior to the use of the NDR. Plaintiff's claim fails because there is no authority suggesting use of an NDR round is, *per se*, unconstitutional. This is also true where, as here, Plaintiff does not allege he suffered any injury from the NDR round. [*See generally* ECF 50]. Because excessive force cannot be proven with regard to the NDR round, there can be

no constitutional violation with respect to the NDR, leading inexorably to the conclusion no Defendant had a duty to intervene even if they knew of the imminent use of an NDR.

Plaintiff further alleges all of the individual Defendants (except Penny, Piscoya, and Reams) failed to intervene in Plaintiff's face being smashed by unspecified means. Although Plaintiff alleges Individual Defendants knew the NDR was to be used, Plaintiff fails to allege in any specific terms how Defendants would have known Penny would smash Plaintiff's face. Plaintiff states in only the most conclusory terms that each defendant was aware of the imminent violence but fails to articulate how or why this is so. Indeed, this could not be so because Plaintiff claims "Defendants then placed Plaintiff in a cell and ordered him face down on the floor, which Plaintiff complied with." [ECF 50 at ¶ 45]. Next, "Penny ... smashed Plaintiff's head and face into the floor so forcefully he broke Plaintiff's glasses and caused serious injury including a large gash and a concussion." [ECF ¶ 51]. Thus, according to Plaintiff, Penny "smashed [Plaintiff's] face into the floor while he lay face-down and helpless" [ECF 50 at ¶ 1]. Because Plaintiff alleges a single strike from Defendant Penny, while Plaintiff allegedly lay prone and compliant, it is unclear how the other Deputies present could have possibly intervened. It would be one matter if Plaintiff alleged his injury occurred during a cuffed restraint or that Penny struck him multiple times while other Deputies watched; however, Plaintiff instead alleges he was smashed on the head one time by one Deputy. Thus, due to the curtailed nature of the alleged assault, there can be no failure to intervene claim. *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (defendant must have had realistic opportunity to intervene to prevent the harm); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008) (summary judgment appropriate on "failure to intervene" claim where plaintiffs did not establish the officer "is informed of the facts that establish a constitutional violation and ... had a realistic opportunity to intervene to prevent the harm from occurring").

And Plaintiff indicates Sergeant Thompson failed to intervene—but a cursory review of the surveillance video demonstrates Sergeant Thompson did not arrive in the booking area until more than eight minutes after any use of force. [*See* **Exh. A** at 35:49]. Furthermore, Sergeant Channel was not in the booking area during the use of the first NDR, was well away from the cell during use of the second NDR, and there is no indication he directly participated or even saw the "smashing" of Plaintiff's face, as alleged. [ECF 50 ¶ 112]. Indeed, Channel never enters the cell. What is more, Deputies Coble and Erickson were 50-100 feet away with no opportunity to see in the cell. At a minimum, the claims against these Defendants should be dismissed in their entirety.

### 2.   *Sufficient Facts Are Lacking on the Excessive Force Allegedly Used*

Second, Plaintiff claims Defendants used excessive force when they used the NDR or when Plaintiff was "smashed." As stated, however, Plaintiff fails to explain how the use of an NDR relates to his claim of excessive force because Plaintiff does not claim to have suffered any injury because of the NDR and, in any event, cannot establish use of a contactless NDR is in any way excessive or unconstitutional. ***Scott v. City of Alb.***, 711 F. App'x 871, 880 (10th Cir. 2017).

Plaintiff also fails to allege how the restraint was excessive. Because Plaintiff self-servingly suggests he was not acting aggressively or otherwise resisting Deputies, Plaintiff's allegations may, at first blush, seem sufficient to state a plausible claim of excessive force. *See* ***Kingsley***, 135 S. Ct. at 2473. As alleged, because Plaintiff received but a single blow from Defendant Penny, the excessive force claims against all remaining Deputies must be dismissed where there are no allegations concerning their use of force, excessive or otherwise, and there was no opportunity to intervene to stop Penny from his alleged action. Plaintiff cannot cite to any "existing precedent plac[ing] the conclusion [Deputies] acted unreasonably in these circumstance 'beyond debate.'" ***Mullenix***, 136 S. Ct. at 309 (quoting ***Al-Kidd***, 563 U.S. at 741). Again, Plaintiff also fails to allege

how Penny harmed him and thus this Court cannot determine whether Penny's use of force was excessive, unconstitutional, or unjustified.

Further, Plaintiff relies on *Kingsley*'s general proposition that any use of force against a pretrial detainee must be objectively reasonable under the circumstances, but such reliance is misplaced. [ECF 50 at p. 36 n.1]; *Mullenix*, 136 S. Ct. at 308 (emphasizing the clearly-established inquiry in qualified-immunity cases "must be undertaken in light of the specific context of the case, not as a broad general proposition") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). "Such specificity is especially important in the Fourth Amendment context," where the Supreme Court has recognized it is "'sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 308. In light of *Kingsley*'s adoption of the objective-reasonableness standard for Fourteenth Amendment excessive-force claims of pretrial detainees, *Mullenix*'s specificity requirement has equal cogency in the Fourteenth Amendment excessive-force context, where the Court must also consider qualified immunity. *E.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) (so concluding in materially identical *Bivens* context); *Perry v. Durborow*, 892 F.3d 1116, 1126-27 (10th Cir. 2018). And, because Plaintiff cannot cite any existing precedent "'squarely govern[ing]'" this situation, the Court should find Individual Defendants are entitled to qualified immunity as to Plaintiff's First Claim for Relief. *See Mullenix*, 136 S. Ct. at 310.

## F.  The Generalized Fourteenth Amendment Unconstitutional Punishment Claim Fails Too

In his Fourth Claim for Relief, Plaintiff fails to allege facts sufficient to establish he was subjected to unconstitutional punishment. Plaintiff seemingly complains the SOG's use of NDRs or the singular blow constituted punishment under the Fourteenth Amendment. [ECF 50 ¶¶ 144, 145]. Plaintiff, however, fails to explain how or why this is so.

The United States Supreme Court has held "[d]ue process requires a pretrial detainee not be punished." **Bell v. Wolfish**, 441 U.S. 520, 535 (1979). Whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or is incident to another legitimate government purpose. *Id.* at 538 n.16. Plaintiff is unquestionably subject to security measures reasonably employed by jail and correctional officials. **Bell**, 441 U.S. at 540; **Allen v. Illinois**, 478 U.S. 364, 373-74 (1986) (detainees may "be subjected to conditions that advance goals such as preventing escape and assuring the safety of others, even though they may not be punished."); **Allison v. Snyder**, 332 F.3d 1076, 1079 (7th Cir. 2003); **Thielman v. Leean**, 282 F.3d 478, 483 (7th Cir. 2002). "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" **Bell**, 441 U.S. at 540. "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." *Id.* at 561. "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537.

To determine whether a jail official may be liable for imposing an unconstitutional punishment, a court must consider two questions. "First, [the court] must ask whether an 'expressed intent to punish on the part of detention facility officials' exists." **Blackmon v. Sutton**, 734 F.3d 1237, 1241 (10th Cir. 2013) (quoting **Bell**, 441 U.S. at 538). If the answer to that question is no, "a plaintiff may still prove unconstitutional punishment by showing the restriction [or condition] in question bears no reasonable relationship to any legitimate governmental objective." *Id.* Because the government has a legitimate penological interest in managing facilities where pretrial detainees are detained, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional

punishment." ***Bell***, 441 U.S. at 540. "In determining whether restrictions or conditions are reasonably related to the [g]overnment's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed [the Supreme Court's] warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate officials have exaggerated their responses to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" ***Id.*** at 540 n.23 (quoting ***Pell v. Procunier***, 417 U.S. 817, 827 (1974)).

Here, Plaintiff does not allege any facts plausibly indicating the use of NDRs or the restraint was done to <u>punish</u> him. *See* ***Steward v. Hodges***, 2017 U.S. Dist. LEXIS 113939, *9 (D.N.M. July 21, 2017) ("sparse" facts in complaint "are insufficient to support a reasonable inference that [an] Officer ... shot Plaintiff with a beanbag maliciously and sadistically for the very purpose of causing harm, as opposed to acting in a good faith effort to maintain or restore discipline"); ***Anderson v. Virga***, 2017 U.S. Dist. LEXIS 47034, *4 (E.D. Cal. Mar. 29, 2017) (plaintiff's allegation he was shot by a less-lethal block gun to quell a disturbance in the prison yard was insufficient to support "a plausible inference [the defendant] maliciously and sadistically shot him to harm him").

Plaintiff claims "Defendants' conduct of deploying routinely and against Plaintiff the Special Operations Group ... firing concussion explosives in his direction and violently assaulting Plaintiff ... was not rationally related to a legitimate government objective or was excessive in relation to that purpose[.]" [ECF 50 ¶ 144]. Plaintiff further alleges, "Defendants conduct constituted unlawful punishment of Plaintiff as a pretrial detainee." [ECF 50 at ¶ 145]. Plaintiff's allegations in his Fourth Claim are the epitome of conclusory statements which, under ***Twombly*** and ***Iqbal*** and their progeny, must be rejected and deemed unworthy of the imprimatur of fact.

Plaintiff also fails to specify how the SOG's actions were not "reasonably related to the institution's interest in maintaining jail security" and, without more, are insufficient to maintain a claim of unconstitutional punishment. *Bell*, 441 U.S. at 540, 547 ("when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.").

Furthermore, because Plaintiff alleges a single strike from Defendant Penny, Plaintiff cannot maintain his claims against any other named Defendant as those Defendants did nothing to punish him as that term of art is specifically used under *Bell* and related authority. Because Plaintiff does not allege how his face was smashed, Plaintiff cannot maintain his claim against Penny either. Moreover, based on Plaintiff's behavior at the jail as described in Section II.A *supra*, Plaintiff cannot maintain the force used was not based on a legitimate penological objective where Plaintiff, in the presence of other detainees, entered the jail highly intoxicated, verbally abusive, obstinate, increasingly agitated, and then repeatedly and actively eschewed the instructions of several Deputies. [**Exh. A**]. Under those circumstances, the force used against Plaintiff was reasonable.

Because Plaintiff does not allege any facts indicating the force employed was used to punish him and because he cannot establish the force used was unrelated to any plausible institutional interest (which is the touchstone of the rational basis test), Plaintiff's allegations fail to state a plausible Fourteenth Amendment claim and should be dismissed.

## III.  CONCLUSION

For the foregoing reasons, Defendants request this Court enter an Order: dismissing ECF 50 with prejudice against all Defendants, as to all claims, and on all theories; and granting all other and further relief deemed just and proper.

Dated and respectfully submitted this 10th day of August, 2020.

s/ Aaron J. Thompson
Aaron J. Thompson, Esq.
Matthew J. Hegarty, Esq.
HALL & EVANS, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
T: (303) 628-3300
F: (303) 628-3368
thompsona@hallevans.com
hegartym@hallevans.com
**ATTORNEYS FOR DEFENDANTS STEVE REAMS, MICHAEL RECOR, TYLER PISCOYA, CORY CHANNEL, JOSEPH MARTINEZ, MICHAEL THOMPSON, KYLE PENNY, ANDREW WILSON, SAVANNAH COBLE, ANNA ERICKSON, and BOARD OF COUNTY COMMISSIONERS OF COUNTY OF WELD, COLORADO**

**<u>CERTIFICATE OF SERVICE [CM/ECF]</u>**

I hereby certify that, on this 10th day of August, 2020, I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**, with

the Clerk of Court using the CM/ECF system which will send notification of such filing to the

following email addresses:

**David G. Maxted, Esq.**
**MAXTED LAW LLC**
dave@maxtedlaw.com

**Kathryn J. Stimson, Esq.**
**STIMSON STANCIL LABRANCHE HUBBARD, LLC**
stimson@sslhlaw.com

*Attorneys for Plaintiff*

> *s/ Marlene Wilson*, Legal Assistant to
> Aaron J. Thompson, Esq.
> Matthew J. Hegarty, Esq.
> HALL & EVANS, L.L.C.
> 1001 17th Street, Suite 300
> Denver, CO 80202
> T:  (303) 628-3300
> F:  (303) 628-3368
> thompsona@hallevans.com
> hegartym@hallevans.com
> **ATTORNEYS FOR DEFENDANTS STEVE REAMS,**
> **MICHAEL RECOR, TYLER PISCOYA, CORY**
> **CHANNEL, JOSEPH MARTINEZ, MICHAEL**
> **THOMPSON, KYLE PENNY, ANDREW WILSON,**
> **SAVANNAH COBLE, ANNA ERICKSON, and**
> **BOARD OF COUNTY COMMISSIONERS OF**
> **COUNTY OF WELD, COLORADO**